IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


JENNIFER KITTRELL                    )
                                     )
v.                                   )          No. 3:13-0557
                                     )
NANCY A. BERRYHILL[1]                )
Acting Commissioner of Social Security   )


## M E M O R A N D U M

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's second motion for judgment on the administrative record (Docket Entry No. 28), to which Defendant has responded (Docket Entry No. 32).[2] Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 33). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 23).

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] Plaintiff's initial motion for judgment on the record (Docket Entry No. 17) was rendered moot when Plaintiff was granted leave and subsequently filed an amended complaint (Docket Entry No. 20). In accordance with the Court's direction following the filing of Plaintiff's amended complaint (*see* Order at Docket Entry No. 27), Plaintiff filed the instant second motion for judgment on the record (Docket Entry No. 28).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **GRANTED**. For the reasons stated herein, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this case for further administrative proceedings.

## I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on April 21, 2012. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 104-05.[3] She alleged a disability onset date of March 1, 2003. AR 104-05. Plaintiff asserted that she was unable to work because of major depressive disorder, a Cluster B personality disorder, attention deficit hyperactivity disorder ("ADHD"), reading disorder, arthritis in her hip, and problems in her back, neck, and hip. AR 69, 86.

Plaintiff's applications were denied initially and upon reconsideration. AR 104-05, 140-41. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Ronald Miller on December 13, 2012. AR 33. On January 24, 2013, the ALJ denied the claim. AR 8-10. On April 8, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

---

[3] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on January 24, 2013. AR 8-10. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful activity since March 1, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

\*\*\*

3. The claimant has the following severe impairments: mild degenerative disc disease of the lumbar and cervical spine; arthritis in the hips; post traumatic stress disorder (PTSD); mood disorder; and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she] can lift and carry up to 20 pounds occasionally with no sitting restrictions. Claimant can stand and walk for 4 hours in an 8-hour workday. Claimant should have direct supervision that is non-confrontational. Claimant can occasionally interact with the general public and co-workers, but would be better working with things rather than people. Claimant can set goals independently and adapt to infrequent change.

\*\*\*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\*\*\*

7. The claimant was born on September 20, 1974 and was 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

***

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 13-21.


## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.


## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*,

609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B.  Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R.

§§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must

come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C.  The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform sedentary work with other express limitations to account for her severe impairments,

and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 13-21.

### D.  Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) finding that ADHD does not represent a severe impairment; (2) finding that Plaintiff's conditions do not satisfy the criteria contained in Listings 12.02, 12.04, 12.06, and 12.08; (3) failing to apply the correct legal standards when assigning weight to opinion evidence; and (4) finding that there is work existing in significant numbers in the national economy that Plaintiff can perform. DE 29 at 16, 19, 24, 27. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id.* at 31.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

**1. The ALJ's evaluation of the opinion evidence.[4]**

Plaintiff argues that the ALJ failed to apply correct legal standards in evaluating the opinion evidence of record, including the report documenting a psychological evaluation with Tim McConkey, M.Ed., as well as a psychological assessment provided by James Michael Scott, M.A., and Dr. David Terrell. DE 29 at 24-26. Plaintiff also faults the ALJ for according dispositive weight to the opinion of Dr. Brad Williams despite the fact that Dr. Williams never examined Plaintiff. *Id.* at 26. Plaintiff cites the Sixth Circuit's opinion in *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066 (6th Cir. 1992), to support her contention that a "medical opinion where the doctor has never treated or examined the claimant and only reviews the file cannot be given dispositive weight." *Id.*

As an initial matter, Plaintiff's representation of the *Walker* holding is not entirely accurate, as the Sixth Circuit did not find that the opinion of a non-examining physician can never be given dispositive weight, but instead refused to accord controlling weight to the report of a non-examining physician because, among other reasons, it "did not advance [the] reasons for disagreeing with the opinion *rendered by the treating physician*, as is required on the face of the [report]." *Walker*, 980 F.2d at 1072 (emphasis added). As discussed by a sister court in this circuit, the "Sixth Circuit noted *in dicta* that it would not give dispositive weight to a report of a non-examining physician who did not explain why he disagreed with the opinion of a treating physician." *Gallion v. Colvin*, No. 2014-81, 2015 WL 2417969, at *9 (E.D. Ky. May 20, 2015) (citing *Walker*, 980 F.2d at 1071-72). In contrast, there is no opinion in the instant case from a treating physician, as noted by the ALJ. AR 18.

---

[4] This assertion of error is addressed first because it involves the basis for the Court's decision to reverse the Commissioner's decision.

Moreover, the ALJ did not accord "dispositive weight" to the opinion of Dr. Williams, as Plaintiff argues. Indeed, the Sixth Circuit has noted that "opinions from non-treating and non-examining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The opinion of a non-examining source is instead weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability[.]" *Id.* (citing 20 C.F.R. §404.1527(c)). Instead, the ALJ accorded "significant weight" to the opinion of Dr. Williams (AR 19), similar to the "great weight" given to the opinion of Dr. Roy Johnson (AR 18), an examining source who evaluated Plaintiff in July of 2012. AR 590. The ALJ also stated that the assigned RFC was based on the opinions of Dr. Williams, Dr. Johnson, and Dr. Linda Blazina (AR 20), the latter of whom represents another examining source. AR 594. Even if the ALJ had not similarly granted significant weight to the opinions of Dr. Johnson and Dr. Blazina (AR 18-19), the "opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (citing SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)); *see also Benson v. Colvin*, No. 7:13-022, 2014 WL 3919577, at *9 (E.D. Ky. Aug. 11, 2014) ("[I]t is not a *per se* error to give more weight to the opinion of a non-examining physician than that given to an examining or treating physician's opinion.").

Despite the foregoing, the Court agrees with Plaintiff that the ALJ committed reversible error by applying erroneous and inconsistent reasoning in his evaluation of the opinion evidence.

The most egregious inconsistency is contained in the ALJ's discussion of his rejection of the psychological assessment provided by Mr. Scott and Dr. Terrell:[5]

> [C]ontrary to Mr. Scott's assertion of a "well-documented and well-defined history of severe emotional and mental instability," the record lacks a consistent longitudinal and compliant mental health treatment history and Mr. Scott's opinion is not consistent with the record. Furthermore, this opinion was generated from a single encounter. Therefore, the undersigned gives this opinion little weight.

AR 19. The Court first notes that dismissing an opinion because it was derived from a single examination of a claimant is inconsistent with relevant regulations and case law. *See* 20 C.F.R. § 404.1527(e)(2)(ii) ("[T]he [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant ... as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."); *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 528 (6th Cir. 2014) ("An ALJ must consider all medical opinions provided in the record, and the opinion of an examining medical source ... is generally given greater weight than the opinion of a non-examining source."); *Wilburn v. Astrue*, No. 3:10-cv-08, 2010 WL 6052397, at *6 (E.D. Tenn. Sept. 13, 2010), *report and recommendation adopted*, 2011 WL 891022 (E.D. Tenn. Mar. 11, 2011) ("Though the opinions of examining physicians are not entitled to as great a weight as those of treating physicians, the ALJ must, nonetheless, explain the weight given to opinions of examining sources."); *Hale v. Astrue*, No. 3:09-cv-0483, 2011 WL 665626, at *10 (S.D. Ohio Jan. 26, 2011), *report and recommendation adopted*, 2011 WL 665440 (S.D. Ohio Feb. 15, 2011) ("In the absence of an opinion that deserves controlling weight, all medical source opinions,

---

[5] The Court notes that Dr. Terrell is a licensed psychologist, thus making him an "acceptable medical source" under 20 C.F.R. § 404.1513(a). Defendant does not argue, nor does the ALJ assert, that the opinion provided by Mr. Scott and Dr. Terrell is not one from an acceptable medical source.

including the opinions of one-time examining physicians, must be weighed under the regulatory factors of supportability, consistency and specialization."). If the ALJ's rejection of the psychological assessment provided by Mr. Scott and Dr. Terrell as a "single encounter" is accepted all opinions from one-time examining sources and non-examining sources would be rendered meaningless.[6]

This erroneous reasoning is especially blatant in light of the ALJ's decision to accord "significant weight" to the opinion of Dr. Williams, who did not examine Plaintiff at any point, but instead rendered an opinion based solely on a review of medical records. AR 19. In addition to the inconsistency of rejecting an opinion because it was based on a single examination of a claimant, yet giving significant weight to an opinion that did not involve any examination of the claimant, the regulations clearly state that the Commissioner will "[g]enerally ... give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(c)(1). An ALJ's rejection of a consulting physician's opinion must be "based on substantial evidence in the record." *Whitfield v. Astrue*, No. 3:07-cv-1091, 2009 WL 1684489, at *2 (M.D. Tenn. June 15, 2009) (citing *Her*, 203 F.3d at 390)). The fact that an examining physician's opinion was based on a single encounter with a claimant does not constitute such substantial evidence.

Similarly inconsistent was the ALJ's decision to grant "significant weight" to the opinion provided by Dr. Blazina regarding Plaintiff's psychological condition, despite the fact that her opinion was based on a "single encounter" with Plaintiff on July 19, 2012. AR 594. The ALJ was certainly within his authority to grant significant weight to Dr. Blazina's opinion based on her

---

[6] The ALJ does give other reasons for discounting the assessment, which, as discussed below, the Court finds equally problematic.

single examination of Plaintiff. The ALJ is not, however, permitted to reject a separate examining source's opinion simply because it was based on a single meeting with Plaintiff:

> This may be a valid reason not to accord [an examining physician's] findings the conclusive weight of a treating medical-source opinion, but that just effectively reduces them to the status of an examining-source opinion; it is not by itself a basis for rejecting them—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings .... An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the ... regulations and the ALJ must provide specific, legitimate reasons for rejecting it. The ALJ did not do that here—the ALJ's assessment simply ended with the recognition of [the examining physician's] limited professional relationship with [the claimant].

*Crowder v. Colvin*, 561 F. App'x 740, 743 (10th Cir. 2014) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).

The ALJ's additional claim that the opinion of Mr. Scott and Dr. Terrell must be rejected because the record "lacks a consistent longitudinal and compliant mental health treatment history" is, at best, underdeveloped. The Sixth Circuit has held that "failure to seek formal mental health treatment is 'hardly probative' of whether the claimant suffers from a mental impairment." *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493 (6th Cir. 2011) (citing *Burton v. Apfel,* 208 F.3d 212 (6th Cir. 2000) (table)); *see also Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). Indeed, the report completed by Mr. Scott and Dr. Terrell accounts for Plaintiff's lack of consistent treatment for her mental conditions. AR 612-13. The ALJ nevertheless relied on this lack of treatment to discount both the report and Plaintiff's overall credibility without considering any justification for such inconsistent treatment, which undermines the ALJ's reasoning. *See Dooley v. Comm'r*

*of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016) ("[B]efore drawing a negative inference from an individual's failure to "seek or pursue regular medical treatment," the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.") (internal citation and quotations omitted). This is significant in light of Plaintiff's explanation during the administrative hearing that she was unable to leave her house with the frequency necessary to maintain the mental health treatment she initially sought at Centerstone Community Mental Health Center ("Centerstone"). AR 45-46.[7]

Finally, the ALJ's broad statement that the report completed by Mr. Scott and Dr. Terrell is "not consistent with the record" is an insufficient basis on which to reject the opinion contained therein. *See Kerkau v. Comm'r of Soc. Sec.*, No. 12-cv-11520, 2013 WL 2947472, at *11 (E.D. Mich. June 14, 2013) ("The ALJ's statement that [an examining physician's][8] opinion 'is inconsistent with the records provided' is conclusory and plainly inadequate."). This perfunctory dismissal of the report is especially inadequate when juxtaposed with the comprehensive nature of the evaluation and subsequent report completed by Mr. Scott and Dr. Terrell. AR 601-15. The report included references to and analysis of numerous records documenting Plaintiff's treatment at Centerstone, Cherokee Health Systems, Dr. Willard West,

---

[7] During the hearing, the ALJ questioned how Plaintiff was able to visit a psychiatrist to obtain medication, but was unable to continue treatment at Centerstone. AR 45. Plaintiff responded that she was unable to attend sessions at Centerstone because they took place "every week or every two weeks," while she only had to see the physician to obtain medication every "six to eight weeks." AR 46. While the Court makes no judgment on the validity of this explanation, there is no indication that the ALJ considered this justification prior to drawing a negative inference from Plaintiff's failure to consistently seek mental health treatment.

[8] The physician in question had examined the subject claimant twice before completing a medical source statement. *Kerkau*, 2013 WL 2947472, at *11.

15

Carthage Family Medical Clinic, University Medical Center, and Volunteer Behavioral Health Care System. AR 608-11. After detailing such records, the report noted that "[t]hese records substantiate far more extensively than [Plaintiff's] partial discussion of these issues the clear severity and chronicity" of her current condition. AR 611. The ALJ's failure to address any actual inconsistencies in the report underscores his casual and improper rejection of the findings contained therein. *See Albaugh v. Comm'r of Soc. Sec.*, No. 14-cv-10963, 2015 WL 1120316, at *7 (E.D. Mich. Mar. 11, 2015) ("The ALJ's generalized conclusion that [the psychological consultative examiner's] opinion is inconsistent with the record evidence, without further discussion of the regulatory factors or the particular evidence with which the opinion is inconsistent, is inadequate, even in light of [the psychological consultative examiner's] status as a non-treating medical source.").

The Court additionally finds that the ALJ improperly assessed the opinion proffered by Tim McConkey, a senior psychological examiner who evaluated Plaintiff in February of 2012. AR 453-59. Mr. McConkey determined that Plaintiff has "poor" functional capacities in the fields of self-direction, interpersonal skills, and work tolerance. AR 458. He also noted that Plaintiff has "developed reclusive behaviors as a result of interpersonal paranoia." AR 458. However, the sole basis for the ALJ's rejection of his opinion is that "Mr. McConkey is not an acceptable medical source as defined in SSR 06-03p and [his] opinion was not endorsed by an acceptable medical source." AR 19. Yet this single reason is insufficient based on the very Social Security ruling cited by the ALJ: "Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and *should be evaluated on key issues such as impairment severity and functional effects*, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3 (August 9, 2006) (emphasis added);

*see also Guyaux v. Comm'r of Soc. Sec.*, No. 13-cv-12076, 2014 WL 4197353, at *5 (E.D. Mich. Aug. 22, 2014) ("Indeed, SSR 06-03p requires the Commissioner to weigh opinion evidence from 'other sources[.]'"). The Sixth Circuit has similarly held that dismissal of an opinion solely because it was issued by a "non-acceptable" source is error:

> In his decision denying [the claimant] disability insurance and SSI benefits, the ALJ stated the findings of nurse practitioner Hasselle, including her letter advising that "[the claimant] was unable to return to work." The ALJ's only explanation for discounting Hasselle's opinion was that "Hasselle is neither a medical doctor nor a vocational expert, and thus lacks the credentials for making such a determination." As it stands, the ALJ's decision was devoid of any degree of specific consideration of nurse practitioner Hasselle's functional assessments. Following SSR 06-03p, the ALJ should have discussed the factors relating to his treatment of Hasselle's assessment, so as to have provided some basis for why he was rejecting the opinion.

*Cruse*, 502 F.3d at 541.[9] In the instant case, the ALJ's logic would again render meaningless any opinions submitted by "non-acceptable" sources, which violates the Commissioner's own regulations. The ALJ's rejection of the aforementioned opinions therefore lacks substantial evidence.

Defendant attempts to justify the ALJ's rejection of these opinions by stating that the ALJ "was confronted with no easy task." DE 32 at 12 (quoting *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008)). The Court does not dispute that the ALJ had the unenviable job of evaluating numerous opinions by various providers in this case. However, this does not relieve the ALJ of his duty to consider every opinion contained in the record. *See Widener v. Astrue*, No. 08-107, 2009 WL 2778215, at *3 (E.D. Ky. Aug. 27, 2009) ("The regulations require the ALJ to consider all of the opinion evidence in the record."). The ALJ in the instant matter rejected the opinion of Mr. Scott and Dr. Terrell without providing a legitimate reason for doing

---

[9] The Sixth Circuit ultimately declined to reverse the Commissioner's decision based on SSR 06-03p because the ruling was not implemented until after the Commissioner had issued its decision.

so. *See Vrabel v. Comm'r of Soc. Sec.*, No. 14-12673, 2015 WL 5244358, at *7 (E.D. Mich. Sept. 8, 2015) ("An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any."); *see also Hickman v. Comm'r Soc. Sec. Admin.*, 399 F. App'x 300, 302 (9th Cir. 2010) ("An ALJ can reject or discount an examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians if the ALJ provides specific, legitimate reasons for doing so, which reasons are based on substantial evidence in the record."). The ALJ also summarily dismissed the opinion of Mr. McConkey as an "other source" opinion, thus preventing any determination as to whether the ALJ's decision was supported by substantial evidence. *See Sears v. Colvin*, No. 1:11-cv-0096, 2015 WL 3606800, at *6 (M.D. Tenn. June 8, 2015) ("The ALJ's failure to adequately address other source opinions or articulate his reasons for rejecting them justifies remand where the failure prevents the reviewing Court from assessing whether the administrative decision is supported by substantial evidence or otherwise deprives the claimant of a substantial right."). The Court thus finds that remand is necessary for an additional hearing before a separate ALJ to include additional consideration of the opinion evidence in the record.

**2. The ALJ's analysis of Listings 12.02, 12.04, 12.06, and 12.08.**

Plaintiff claims that she meets all of the criteria contained in Listings 12.02, 12.04, 12.06, and 12.08,[10] and argues that the ALJ erred by failing to find that Plaintiff meets such listings due to "improper contextualization of the evidence of record pertaining to her activities of daily living and social functioning." DE 29 at 19. Plaintiff also suggests that because the ALJ did not explicitly state whether she meets the "paragraph A" criteria, the ALJ concluded that Plaintiff

---

[10] As of January 27, 2017, these listed neurological impairments are no longer in effect. However, because Plaintiff's application was filed in 2013, the listings apply to the instant analysis.

does, in fact, meet such criteria. *Id.* at 20. Therefore, Plaintiff argues, the only issue before the Court is whether substantial evidence supports the ALJ's finding that Plaintiff does not meet the "paragraph B" criteria for the respective listings. *Id.*

Defendant denies that the "paragraph A" criteria have been established simply because the ALJ did not explicitly state that Plaintiff does not meet such criteria. DE 32 at 10. Defendant argues that it is Plaintiff's burden to demonstrate that she meets all of the requirements for each identified listing, and notes that Plaintiff offers little more than subjective complaints to support her argument, which is insufficient to demonstrate equivalence with any of the listings. *Id.* at 10-11.

Plaintiff does not describe any of the "paragraph A" criteria, which vary for each of the identified listings, but does list the "paragraph B" criteria, which are the same for each of these listings, and require that the claimant demonstrate at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation. 20 C.F.R. § 404, Subpt. P, App. 1. Plaintiff focuses solely on the first two limitations, noting that she has continually reported daily activities that demonstrate ongoing struggles with "paranoia and self-isolation." DE 29 at 21-23. She also claims that the ALJ improperly relied on "snippets" of evidence to conclude that she does not suffer from marked restrictions in her daily activities or experience marked difficulty in social functioning. *Id.* at 23.

Despite Plaintiff's argument, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's conditions do not meet the requirements contained in the "paragraph B" criteria. In finding that Plaintiff suffers from only mild restrictions in this area, the ALJ noted that Plaintiff does laundry, enjoys television, and occasionally prepares meals. AR 15. While

such an analysis is less than robust, such activities can serve as support for a finding of less than marked restrictions with respect to daily activities. *See Dawson v. Comm'r of Soc. Sec. Admin.*, No. 1:09-cv-456, 2011 WL 8004180, at *10 (S.D. Ohio Jan. 10, 2011) (holding that claimant's ability to "use[] a microwave to cook" was evidence supporting ALJ's finding of mild restrictions in claimant's daily living); *Byrd v. Comm'r of Soc. Sec.*, No. 1:12-cv-1228, 2014 WL 1117891, at *6 (W.D. Mich. Mar. 20, 2014) (holding that claimant's ability to watch television supported ALJ's finding of mild restrictions in claimant's daily living); *Fitzpatrick v. Comm'r of Soc. Sec.*, No. 3:12-cv-1345, 2013 WL 3480372, at *7 (N.D. Ohio July 10, 2013) (affirming ALJ's finding that Plaintiff's activities of daily living were mildly limited based in part on claimant's report that he watched television); *Varela v. Colvin*, No. 3:14-cv-0556, 2015 WL 736978, at *13 (M.D. Tenn. Feb. 20, 2015), *report and recommendation adopted*, No. 3:14-cv-0556, 2015 WL 1057772 (M.D. Tenn. Mar. 10, 2015) (holding that substantial evidence existed to support the ALJ's finding of mild restrictions of daily activities based on claimant's ability to "prepare[] quick and single meals," do laundry, and watch television).

Moreover, there appear to be several discrepancies in Plaintiff's reported daily activities. During the administrative hearing, Plaintiff alleged that "merely running her bathwater wears her out" (DE 29 at 22), a claim that the ALJ appeared to find dubious. AR 50-51. Plaintiff later backpedaled by stating that she did not "see the point" in bathing because "nobody really sees [her] very often" (AR 51), a claim that is notably different than alleging that turning a faucet handle "wears her out." DE 29 at 22. This is also inconsistent with her previous assertion that her husband runs her bath water for her and forces her to bathe. AR 251-52. Plaintiff additionally claims that her husband prepares her meals (DE 29 at 22; AR 251), despite previously reporting that she is able to prepare meals for herself and use the microwave (AR 597), and later testifying

that she prepares her own meals. AR 51.[11] Plaintiff also testified during the hearing that she no longer lives with her husband (AR 48), which undermines her claim that her husband forces her to bathe, runs her bath water for her, shaves her legs and armpits, prepares her meals, and gives her medication. AR 251-52. Such inconsistences are particularly significant because Plaintiff's argument for equivalence with the aforementioned listings is based almost entirely on her own reports and testimony regarding the severity of her conditions. *See Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 852 (6th Cir. 1986) ("[S]ubjective allegations of disabling symptoms ... cannot alone support a finding of disability.").

The Court additionally finds that the ALJ's conclusion that Plaintiff experiences moderate difficulties in social functioning is supported by substantial evidence. The ALJ relied largely on the report prepared by Dr. Blazina, which opined that Plaintiff's social functioning was "moderately impaired[.]" AR 599. Plaintiff claims that this report is "internally inconsistent with the rest of the claimant-supplied information provided in her report" (DE 29 at 23), but fails to identify any information in the report that is inconsistent or undermines her findings.[12] The Court notes that Dr. Blazina referenced Plaintiff's own claims that she was both physically aggressive towards her husband and withdrawn due to nervousness, reports that appear to support a finding of moderate impairment in social functioning. AR 595, 599. Because Plaintiff points to no inconsistencies in Dr. Blazina's report, her argument is unavailing.

---

[11] Confusingly, Plaintiff also initially claimed that she does not prepare any food for herself, in contrast to her subsequent testimony. AR 51, 252.

[12] Notably, Dr. Blazina also referenced inconsistencies in Plaintiff's statements during the examination, including Plaintiff's claim that she had never used alcohol or drugs despite records indicating substance abuse. AR 596.

Even a "cursory discussion of a particular listing does not require remand where the ALJ's opinion as a whole demonstrates sufficient consideration of the relevant evidence." *Devault v. Comm'r of Soc. Sec.*, No. 14-11986, 2015 WL 7450399, at *2 (E.D. Mich. Nov. 24, 2015) (internal citation omitted). Here, the ALJ properly relied on Plaintiff's documented daily activities and the report of Dr. Blazina to conclude that Plaintiff failed to meet the criteria contained in the "paragraph B" criteria of Listings 12.02, 12.04, 12.06, and 12.08. Moreover, even if the ALJ had failed to adequately address Plaintiff's conditions in relation to these listings, the Court may not remand an ALJ's determination with respect to the listed impairments "unless [the claimant] can show that the ALJ's error harmed her; that is, that there is evidence in the record that [the claimant] meets the criteria of a listing." *Cygan v. Comm'r of Soc. Sec.*, No. 14-14356, 2016 WL 1128087, at *3 (E.D. Mich. Mar. 23, 2016) (internal citation and quotations omitted). As discussed, the Court finds no evidence that Plaintiff's conditions meet the criteria contained in any of these listings.[13] This assertion of error is therefore rejected.

**3. ADHD and the testimony of the Vocational Expert.**

Plaintiff's remaining assertions of error involve the ALJ's determination that ADHD does not represent a severe impairment (DE 29 at 16) and the testimony provided by the Vocational Expert during the administrative hearing. *Id.* at 27. Because of the previous finding that remand is necessary for an additional hearing, the Court declines to address these assertions of error at this time.

---

[13] Based on the finding that Plaintiff fails to meet the "paragraph B" criteria, the Court declines to address Plaintiff's argument that she successfully demonstrated that she met the requirements of the "paragraph A" criteria.

# V. CONCLUSION

For all of the above reasons, Plaintiff's motion for judgment on the administrative record (DE 28) is GRANTED. The Court hereby REVERSES the decision of the Commissioner and REMANDS this case for further proceedings consistent with this ruling.

An appropriate Order will accompany this memorandum.


BARBARA D. HOLMES
United States Magistrate Judge